No. 18-17320

———————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**WELLS FARGO BANK, N.A.,
Plaintiff - Appellant,**

v.

**MAHOGANY MEADOWS AVENUE TRUST,
Defendant-Appellee,**

**and**

**COPPER CREEK HOMEOWNERS
ASSOCIATION; HAMPTON &
HAMPTON COLLECTIONS, LLC,
Defendants.**

**On Appeal from an Order of the
United States District Court for the District of Nevada
District Court Case No.: 2:17-cv-01469-JCM-CWH**

**APPELLANT'S OPENING BRIEF**

| | |
|---|---|
| Andrew M. Jacobs | Kelly H. Dove |
| Arizona Bar No. 21146 | Nevada Bar No. 10569 |
| Snell and Wilmer L.L.P. | SNELL & WILMER L.L.P. |
| One Arizona Center | 3883 Howard Hughes Parkway, |
| 400 East Van Buren | Suite 1100 |
| Phoenix, Arizona 85004-2202 | Las Vegas, NV 89169 |
| ajacobs@swlaw.com | kdove@swlaw.com |
| Telephone: (602) 382-6000 | Telephone: (702) 784-5200 |
| Facsimile: (602) 382-6070 | Facsimile: (702) 784-5252 |

*Attorneys for Wells Fargo Bank, N.A.*

1

## Disclosure Statement

The undersigned counsel of record certifies that the following are persons and entities as described in Federal Rule of Appellate Procedure 26.1 and must be disclosed. Wells Fargo Bank, N.A. discloses that Wells Fargo & Company owns 100 percent of the stock of Wells Fargo Bank, N.A. Wells Fargo & Company is a publicly-held corporation and has no parent corporation. No other publicly-held corporation owns 10% or more of Wells Fargo & Company's stock.

# TABLE OF CONTENTS

**Page**

Disclosure Statement ........................................................................ i

Introduction and Summary of the Argument ......................................... 1

Jurisdictional Statement ................................................................... 5

Issues Presented .............................................................................. 6

Statement of the Case ...................................................................... 6

I.    Nature of the Case ................................................................... 6

II.   Proceedings Below .................................................................. 6

Factual Background .......................................................................... 7

Standard of Review ......................................................................... 10

Argument ..................................................................................... 10

      I.      The Statute Effects a Delegated Private-Actor Taking
             That Entirely Ousts Wells Fargo, and Thus Violates
             the Takings Clause of the United States Constitution. ...... 10

           A.     There Is No Question That a Lien Is "Property"
                    Under the Takings Clause Which, If Taken or
                    Destroyed by a Statute, as Happened Here,
                    Requires Compensation. ............................................... 12

           B.     By the Statute, Nevada Authorizes the
                    Destruction of First Liens, and Authorized the
                      HOA Here to Take and Destroy Wells Fargo's
                      Property. ................................................................... 15

           C.     The Statute Is a Taking Because It Fits Within
                    the Tradition in American Law of Delegated
                    Private Takings, Stretching from Nineteenth
                    Century Railroads to the Supreme Court's
                    Decision in Loretto. ..................................................... 16

## TABLE OF CONTENTS
(continued)

Page

D.  The Taking Here Was Without Just Compensation, Because It Is Undisputed That No One Paid Wells Fargo for Loss of the Property Rights That the HOA Foreclosure Extinguished. ...... 18

E.  The District Court Erred by Relying on Saticoy Bay to Find That Foreclosure Under the Statute Is Not a Taking – a Conclusion That Conflicts with a Host of U.S. Supreme Court Authority. .......... 18

   1.  *Saticoy Bay* Conflicts with Radford, Armstrong, and Security Industrial Bank by Treating Liens as a Species of Property the Government May Extinguish Without Compensation. .................................................... 19

   2.  *Saticoy Bay* Conflicts with *Lucas* and *Lingle* By Holding That Nevada's Complete Destruction of Wells Fargo's Property Interest Was Not a *Per Se* Taking. .................... 22

   3.  *Saticoy Bay* Conflicts with Loretto in Finding That Nevada's Empowerment of Intermediaries to Completely Extirpate Wells Fargo's Property Rights Makes It Any Less a Taking. .................................................... 24

   4.  Even If "Legitimate Investment-Backed Expectations" Mattered Here, and They Do Not, *Saticoy Bay* Erred in Deciding That Wells Fargo Lacked Any. .................................. 25

   5.  Governing Circuit Law Provides that NRS 116 Is Action by Nevada's Government, as It Operates to Eradicate Wells Fargo's Mortgage. ..................................... 27

# TABLE OF CONTENTS
(continued)

**Page**

      6.   The U.S. Supreme Court's New Decision in *Knick v. Township of Scott* Underscores the Vitality of the Takings Clause and the Need to Apply It Here. .................................................. 29

II.   The Sale Effects an As-Applied Due Process Violation Because the Form of the Notice of Default and Notice of Sale Was Not Calculated to Apprise Wells Fargo of the Danger to Its Deed of Trust................................................................. 29

III.  The District Court Erred by Not Permitting Wells Fargo to Support Its Quiet Title Claim Under the SCRA. ........................... 32

      A.   The SCRA Preempts Contrary State Law and Protects Carrasco's Property Interest......................... 32

          1.   The Foreclosure Occurred in Violation of the SCRA and Is Thus Invalid. ................................. 32

          2.   The SCRA Preempts the State Foreclosure Statute.................................................................. 34

      B.   The District Court Abused Its Discretion by Dismissing Wells Fargo's Complaint Without Allowing Wells Fargo to Support Its Quiet Title Claim under the SCRA. ............................................... 35

Conclusion................................................................................ 38

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Armstrong v. United States,*
   364 U.S. 40 (1960) ..................................................................... passim
*Berezovsky v. Moniz,*
   869 F.3d 923 (9th Cir. 2017) ..................................................... 2
*Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.,*
   832 F.3d 1154 (9th Cir. 2016) ..................................................... passim
*Cebe Farms, Inc. v. United States,*
   116 Fed. Cl. 179 (2014) ............................................................. 11
*Chicago, B. & Q.R. Co. v. Chicago,*
   166 U.S. 226 (1897) ................................................................... 10
*Cipollone v. Liggett Grp., Inc.,*
   505 U.S. 504 (1992) ................................................................... 34
*Crosby v. Nat'l Foreign Trade Council,*
   530 U.S. 363 (2000) ................................................................... 34
*Dewsnup v. Timm,*
   502 U.S. 410 (1992) ................................................................... 15
*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
   505 U.S. 88 (1992) ..................................................................... 34
*In re Drexel Burnham Lambert Gp. Inc.,*
   995 F.2d 1138 (2d Cir. 1993) ..................................................... 30
*In re Sheehan,*
   253 F.3d 507 (9th Cir. 2001) ..................................................... 36
*Knick v. Township of Scott,*
   138 S. Ct. 1262 (2019) ............................................................. 4, 11, 29
*Kruso v. International Telephone & Telegraph Corp.,*
   872 F.2d 1416 (9th Cir.1989) ..................................................... 10
*Lingle v. Chevron U.S.A. Inc.,*
   544 U.S. 528 (2005) ............................................................. 11, 22, 23
*Loretto v. Teleprompter Manhattan CATV Corp.,*
   458 U.S. 419 (1982) ............................................................. 17, 24
*Louisville Joint Stock Land Bank v. Radford,*
   295 U.S. 555 (1935) ................................................................... passim
*Lucas v. S. Carolina Coastal Council,*
   505 U.S. 1003 (1992) ............................................................. 12, 22, 23

# TABLE OF AUTHORITIES
### (continued)

**Pages**

*McGreevey v. PHH Mortg. Corp.*,
  897 F.3d 1037 (9th Cir. 2018) ................................................ 33

*Mennonite Bd. of Missions v. Adams*,
  462 U.S. 791 (1983) .............................................................. 30

*Morrissey v. Brewer*,
  408 U.S. 471 (1972) .............................................................. 30

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .............................................................. 30

*Murtishaw v. Woodford*,
  255 F.3d 926 (9th Cir. 2001) ................................................ 28

*Pension Benefit Guar. Corp. v. Carter & Tillery Enter.*,
  133 F.3d 1183 (9th Cir.1998) ............................................... 36

*Presault v. United States*,
  100 F.3d 1525 (Fed. Cir. 1996) ............................................ 26

*Rancho de Calistoga v. City of Calistoga*,
  800 F.3d 1083 (9th Cir. 2015) .............................................. 16

*Serrano v. Grand Sierra Resort*, 3:12-CV-149-RCJ-WGC,
  2013 WL 5278864 (D. Nev. Sept. 16, 2013) ......................... 36

*Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
  535 U.S. 302 (2002) ........................................................ 10, 18

*Thomas v. Bd. of Trs. of Galveston Indep. Sch. Dist.*,
  515 F. Supp. 280 (S.D. Tex. 1981) ....................................... 30

*United States v. Kenner Gen. Contractors, Inc.*,
  764 F.2d 707 (9th Cir. 1985) ................................................ 36

*United States v. Sec. Indus. Bank*,
  459 U.S. 70 (1982) ......................................................... passim

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) .......................................... 33, 34

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*,
  473 U.S. 172 (1985) .............................................................. 29

*Zimmerman v. City of Oakland*,
  255 F.3d 734 (9th Cir. 2001) ................................................ 10

# TABLE OF AUTHORITIES
## (continued)

**Pages**

<u>**State Cases**</u>

*Aquila Sw. Pipeline Corp. v. Gupton,*
    886 S.W.2d 497 (Tex. App. 1994) ........................................ 17
*Arkansas Power & Light Co. v. Harper,*
    460 S.W.2d 75 (Ark. 1970) ................................................... 16
*Hagemeier v. Indiana & Michigan Elec. Co.,*
    457 N.E.2d 590 (Ind. App. 1983) ......................................... 17
*McInturff v. Oklahoma Nat'l Gas Transmission Co.,*
    475 P.2d 160 (Okla. 1970)..................................................... 17
*Saticoy Bay. Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo,*
    *Home Mortgage*, 388 P.3d 970 (Nev. 2017) .................................. passim
*Scrimer v. Eighth Judicial Dist. Court ex rel. County of Clark,*
    116 Nev. 507, 998 P.2d 1190 (2000) ..................................... 36
*SFR Investments Pool 1, LLC v. Bank of New York Mellon,*
    422 P.3d 1248 (Nev. 2018) ............................................... 2, 3
*SFR v. U.S. Bank,*
    334 P.3d 408 (Nev. 2014) ............................................... 1, 15
*Times Mirror Cable Television of Springfield v. First Nat'l Bank,*
    582 N.E.2d 216 (Ill. App. 1991) .......................................... 16
*Williams Telecomm. Co. v. Gragg,*
    750 P.2d 398 (Kan. 1988)..................................................... 17

<u>**Federal Statutes**</u>

12 U.S.C. § 4617.................................................................... 2
28 U.S.C. § 1295.................................................................... 5
28 U.S.C. §§ 1331 and 1332 ................................................... 5
50 U.S.C. § 3953................................................................ 33, 34
U.S. Const. amend. V ........................................................ 10, 18
United States Constitution.10 ................................................. i

<u>**State Statutes**</u>

Ala. Code § 37-6-3(15)........................................................... 16
NRS § 116.3116.................................................................... 33
Or. Rev. Stat. 772.410 .......................................................... 17

## Introduction and Summary of the Argument

This case comes to this Court five years into a crisis affecting Nevada homeowners, lenders, and the ownership of roughly 2,000 to 3,000 homes[1] valued at an estimated half-billion dollars. The Statute at issue used to be an innocuous, Nevada-specific adaptation of the Uniform Common Interest Ownership Act, which governs certain matters relating to homeowners' associations and condominium associations. But twenty years after its inception in 1991, speculators began exploiting the Statute as a vehicle for homeowners' associations to foreclose their tiny liens and wipe out first position mortgages, as well as – importantly – the borrower's ownership of the home. In 2014, the Nevada Supreme Court held in a closely divided and hotly contested 4-3 decision that the Statute permits that outcome. *SFR v. U.S. Bank*, 334 P.3d 408 (Nev. 2014). *SFR v. U.S. Bank's* reinvention of the Statute occasioned many important reactions to its holding.

First, in its next session after *SFR v. U.S. Bank*, the Nevada Legislature unanimously repealed the features of the Statute that

---

[1] *See* Sean Whaley, *Appeals Court Dashes Hopes for Investors Who Bought Foreclosed Homes in Nevada*, Las Vegas Review-Journal (August 20, 2016).

ultimately led this Court to strike it down as unconstitutional in *Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1156 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2296 (2017). This Court also pared back the reach of the Statute by holding that 12 U.S.C. § 4617 preempts the Statute to the extent the Statute purports to authorize HOAs to extinguish property interests of Fannie Mae or Freddie Mac without the FHFA's consent through the foreclosure of the HOA lien. *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017).

However, in 2018, at the request of the District of Nevada, which certified to the Nevada Supreme Court precisely the state law question already answered by this Court in *Bourne Valley*, the Nevada Supreme Court reinterpreted NRS 116. That reinterpretation effectively undid the holding that NRS 116 did not require notice to banks before their mortgages were destroyed by the HOA foreclosure sales. *Compare SFR Investments Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018) *with Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1156, 1159 (9th Cir. 2016).

Importantly, the Nevada Supreme Court's new holding is limited to the question posed to it about the notice NRS 116 required before

extinguishing mortgage liens. *Bank of New York Mellon*, 422 P.3d at 1249. This means it does not touch Wells Fargo's arguments here that NRS 116 effects a taking – an issue unrelated to prior notice. Nor does the certified question ruling alter the law of this Circuit that NRS 116 is state action for purposes of whether it violates the constitutional rights of affected persons whose property interests it destroys. *Bourne Valley,* 832 F.3d at 1159-1160 ("In this context, where the mortgage lender and the homeowners' association had no preexisting relationship, the Nevada Legislature's enactment of the Statute is a 'state action.'").

Before that backdrop, the district court below made two significant errors in deciding to quiet title in a speculator who bought a house at an HOA foreclosure sale under the Statute that purported to extinguish Wells Fargo's property rights under a first deed of trust. This Court now has the ability to resolve what remains of this crisis by reaching some of the few but important issues that remain unresolved.

First, without analysis, the district court followed the Nevada Supreme Court's holding that the Statute cannot effect a taking for the reasons set forth by the Nevada Supreme Court in *Saticoy Bay*. *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage*, 388

P.3d 970, 975 (Nev. 2017). That issue, which this Court has not yet reached, lies at the heart of this Brief. *Bourne Valley*'s state action analysis means that even though the Nevada Supreme Court reconstrued the Statute in a way that undercut part of its holding, it remains the law of this Circuit that there is state action in the Statute's destruction of mortgage rights through the foreclosure of the HOA lien. This Court should decide now whether the destruction of a mortgage holder's property rights here constitutes a taking, given the analytic errors in *Saticoy Bay*, given that *Bourne Valley* has been partially undone, and given the need for guidance in Nevada as the HOA litigation crisis continues. And the U.S. Supreme Court's decision earlier this week in *Knick v. Township of Scott*, 138 S. Ct. 1262 (2019), undeniably reinvigorates the Takings Clause, calls for its application regardless of whether parties used supposed state law remedies, and should lead this Court to give close and careful consideration to Wells Fargo's claim here.

<u>Second</u>, the district court erred by rejecting Wells Fargo's claim that the Statute is subject to an as-applied constitutional challenge because the content of the notice did not adequately inform Wells Fargo of the threat to its interest.

<u>Third</u>, the district court erred by declining to allow Wells Fargo to raise an additional basis for its quiet title claim under the Servicemembers' Civil Relief Act ("SCRA"). The SCRA prohibits the foreclosure of property belonging to active-duty military member, which is what occurred here. Wells Fargo was actively investigating facts relevant to the applicability of the SCRA and preparing to disclose the same when the district court dismissed the action and refused Wells Fargo the ability to litigate its claims.

As such, Wells Fargo seeks this Court's reversal of the district court's judgment in Mahogany Meadows' favor, and its resolution of these important questions.

## Jurisdictional Statement

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1332. The district court entered final judgment in Mahogany Meadows Avenue Trust's ("Mahogany Meadows") favor on November 6, 2018. Wells Fargo filed a timely Notice of Appeal on December 3, 2018. This Court thus has jurisdiction under 28 U.S.C. § 1295.

## Issues Presented

1.     Whether the district court erred by following, without analysis, a state supreme court decision on questions of federal constitutional law that is both incorrect and not binding on federal courts.

2.     Whether the district court erred by concluding that the content of the notice to Wells Fargo was sufficient to comply with federal constitutional due process requirements.

3.     Whether the district court erred by declining to allow Wells Fargo to raise the SCRA as a basis for its quiet title claim.

## Statement of the Case

## I.     Nature of the Case

This appeal arises from the purchase of an interest in real property at a homeowners' association ("HOA") foreclosure sale.

## II.     Proceedings Below

Wells Fargo filed its Complaint in this action on May 23, 2017. II ER 152-65.  Mahogany Meadows filed a Motion to Dismiss Wells Fargo's Complaint on June 14, 2017.  II ER 98-138. Wells Fargo filed its Response on July 24, 2017 (II ER 75-97), and Mahogany Meadows filed its Reply, completing briefing of the motion, on July 31, 2017 (II ER 63-74).

6

On June 29, 2017, the HOA also filed a Motion to Dismiss Wells Fargo's Complaint. II ER 166-71. Wells Fargo and the HOA subsequently stipulated to dismiss the HOA without prejudice, pursuant to an agreement between the two parties. In accordance with Wells Fargo and the HOA's stipulation, the Court entered an order dismissing the HOA on August 2, 2017. II ER 166-71.

The district court granted Mahogany Meadows' Motion to Dismiss on March 16, 2018— more than nine months after Mahogany Meadows filed its motion to dismiss, and while discovery was ongoing. I ER 6-13. Wells Fargo moved the district court to reconsider its dismissal of Mahogany Meadows in light of relevant evidence about to be produced in discovery. II ER 50-62. The district court denied Wells Fargo's motion on November 6, 2018. I ER 1-5. This appeal followed.

## Factual Background

On June 13, 2008, Luis A. Carrasco and Janet Kongnalinh (the "Borrowers") purchased the real property located at 6896 Mahogany Meadows Avenue, Las Vegas, Nevada, 89122 (the "Property"). II ER 154. To finance the Property, the Borrowers executed a promissory note (the "Note") and Deed of Trust in favor of Wells Fargo as the lender. The Deed

of Trust was promptly recorded on July 1, 2008. II ER 154. The Conditions, Covenants & Restrictions (CC&Rs) recorded as to the Property contain a mortgage savings clause which states that any lien on the Property is not superior to a deed of trust recorded against the Property. II ER 154.

On April 18, 2011 a Notice of Delinquent Assessment Lien was recorded on behalf of Copper Creek Homeowners Association (the "HOA") for outstanding amounts owed. II ER 154-55. The Notice of Lien did not state that it was a superpriority lien and did not indicate in any way that it was a lien superior to Wells Fargo's Deed of Trust. II ER 155. On May 23, 2011, a Notice of Default and Election to Sell Real Property to Satisfy Delinquent Assessment Lien ("Notice of Default and Election to Sell") was recorded on the HOA's behalf. II ER 155. That Notice of Default also did not state that it was noticing a default on a superpriority lien and did not indicate in any way that the HOA lien was superior to Wells Fargo's Deed of Trust. II ER 155.

A Notice of Trustee's Sale was recorded on December 21, 2012. II ER 155. The Notice did not state that the Trustee's Sale would foreclose

on a super-priority lien or indicate in any way that Wells Fargo's Deed of Trust was in jeopardy.

Mahogany Meadows purchased the Property for $5,332.00 at public auction on February 5, 2013. II ER 155. The Notice of Lien, Notice of Default, and Notice of Sale, the HOA did not intend to extinguish Wells Fargo's Deed of Trust. II ER 155.

Pursuant to the statements in the Notice of Lien, Notice of Default, and Notice of Sale, the HOA did not convey authorization to foreclose on any the super-priority portion of the HOA lien. II ER 155. At the time of the HOA foreclosure sale the HOA did not declare its intent to foreclose on a super-priority lien in any recorded document or any of the notices resulting in uncertainty regarding the status of title the HOA would convey at the time of the foreclosure sale. II ER 155.

At all relevant times herein, including the dates the HOA allegedly served its Notice of Default, Notice of Trustee's Sale, and conducted the foreclosure sale, Carrasco was an active-duty military member. II ER 33.

## Standard of Review

This Court reviews a dismissal under Rule 12 de novo. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th

Cir.1989). This Court reviews denials of Rule 59(e) motions for abuse of discretion. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

## Argument

## I. The Statute Effects a Delegated Private-Actor Taking That Entirely Ousts Wells Fargo, and Thus Violates the Takings Clause of the United States Constitution.

The Statute, by extinguishing the property rights of first lien holders like Wells Fargo without compensation, is repugnant to the Takings Clause of the United States Constitution. The Fifth Amendment prohibits "private property be[ing] taken for public use without just compensation." U.S. Const. amend. V; *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 228-29 (1897). When the government takes altogether an interest in property, "it has a categorical duty to compensate the former owner." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). Where the government effects a complete ouster of a property interest, that is a *per se*, physical taking that the government must compensate under the Fifth Amendment. *See, e.g., Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (holding that where government requires an owner to suffer a permanent physical

10

invasion of her property – however minor – it must provide just compensation); *Cebe Farms, Inc. v. United States*, 116 Fed. Cl. 179, 192 (2014) (recognizing that physical takings "involve a physical occupation or destruction of property").

An unconstitutional taking occurred here because: (a) Wells Fargo's lien on the Borrowers' home was "property" within the meaning of the Takings Clause; (b) by the Statute, Nevada authorized the HOA to extinguish Wells Fargo's property interest entirely; (c) Nevada's delegation to a private actor of the power to extinguish Wells Fargo's property interest doesn't make it any less a taking, given the rich history of delegated private takings law, and given that the requirement of state action in takings is general and well-satisfied here; and (d) no one paid Wells Fargo for the property interest it lost.

Finally, the U.S. Supreme Court's new decision in *Knick v. Township of Scott* underscores the vitality of the Takings Clause and the need to apply it here. In that case, the Supreme Court ruled that a property owner has a claim for violation of the Takings Clause as soon as property is taken without paying for it. It is now clear that there is no prior exhaustion requirement, and no argument remains that Wells

Fargo should have used state law remedies. This court should proceed to reach the issues, as the U.S. Supreme Court emphasized it should.

**A. There Is No Question That a Lien Is "Property" Under the Takings Clause Which, If Taken or Destroyed by a Statute, as Happened Here, Requires Compensation.**

Supreme Court case law could hardly be clearer that Wells Fargo's lien is "property," which if taken or destroyed, must be compensated under the Fifth Amendment. *See United States v. Sec. Indus. Bank*, 459 U.S. 70, 76-77 (1982); *Armstrong v. United States*, 364 U.S. 40, 48 (1960). It is beyond dispute that a lien – including the first lien on the Borrowers' home here – is "property" within the meaning of the Clause. *Sec. Indus. Bank*, 459 U.S. at 76-77. As such, the extinguishment or destruction of that lien by government is a taking under the Clause. *Id.* at 77-78. And this taking was "unconditional and permanent." *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1012 (1992). Given that the Statute effected the destruction of Wells Fargo's property, it was a taking. *Sec. Indus. Bank,* 459 U.S. at 76-77.

But the Statute's taking of Wells Fargo's property becomes even clearer in the remarkably applicable *Armstrong* case. There, the Supreme Court found a statute that destroyed the entire value of a lien

12

to be a taking. *Armstrong*, 364 U.S. at 48. In *Armstrong*, where materialmen delivered materials to a contractor for use in constructing navy boats and obtained liens in the vessels pursuant to state law, the Court held that the government committed a taking when it took title to and possession of the property and made it impossible for the materialmen to enforce their liens. *Id.* There, the statute gave the Government the right to recover all unfinished work, including materials, free of encumbrances, to protect the government's property interests. *Id.* The Supreme Court explained that the "total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment 'taking.'" *Id.* In other words, the lienholders had compensable property, but "[i]mmediately afterwards, they had none." *Id.* And, "[t]his was not because their property vanished into thin air," but rather because the value of the liens had been destroyed by statutory fiat. *Id.* The Statute here likewise effected the complete destruction of the interest of Wells Fargo as a first lien holder. *Armstrong* compels the conclusion that the Statute effects an unconstitutional taking.

Finally, underscoring the taking present here, the Supreme Court struck down as a prohibited regulatory taking a law that, like the Statute, took banks' security interest in their collateral. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935). The *Radford* Court held unconstitutional the Frazier-Lemke Act, which allowed farmers to buy their property at its current appraised value on a deferred payment plan. *Id.* at 580-81. The Act's infringement of a mortgagee's right to recover full payment before being forced to abandon its security interest was impermissible because that is "the essence" of a mortgage. *Id.* The Court held that the Act impaired substantive property rights and held that Fifth Amendment eminent domain proceedings and compensation were required to alter the mortgagee's interest in that way. *Id.* The Court concluded:

> For the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

*Id.* at 601-02. Decided during the Great Depression, *Radford* remains the law. *See Sec. Indus. Bank*, 459 U.S. at 78 (citing *Radford* for approval); *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (same). The Statute's taking of Wells Fargo's property is total and not partial, for its right was destroyed by the HOA foreclosure sale and not merely infringed, as in *Radford*. But *Radford* is a powerful reminder of the limitations of state power, and that the Fifth Amendment is a bulwark against laws that alter or destroy the property of mortgagees.

**B. By the Statute, Nevada Authorizes the Destruction of First Liens, and Authorized the HOA Here to Take <u>and Destroy Wells Fargo's Property.</u>**

Nevada authorizes the destruction of first liens in the Statute. *SFR*, 334 P.3d at 418. When an HOA forecloses on its lien under the Statute, extinguishment of the first lien results. *Id.* Thus, under *SFR v. U.S. Bank*, the HOA foreclosure sale necessarily destroyed Wells Fargo's property interest in the Razo home.

**C. The Statute Is a Taking Because It Fits Within the Tradition in American Law of Delegated Private Takings, Stretching from Nineteenth Century <u>Railroads to the Supreme Court's Decision in *Loretto*.</u>**

The fact that Nevada has reposed the power to destroy liens in HOAs in no way makes their destruction any less a taking.

American law has a "long and distinguished" tradition of delegated private takings, meaning exercises of the power to condemn or take property by private actors to whom the state has delegated that power for a limited purpose. *See Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1092 (9th Cir. 2015) (citing Abraham Bell, *Private Takings*, 76 U. Chi. L. Rev. 517, 545 (2009)). The most well-known example was that of the railroad, to which states often delegated powers of eminent domain in the nineteenth century. *See id.* Yet as Professor Bell points out in his excellent treatment of this point, this doctrine is alive and well, as many American states confer limited powers to take on private actors today. *Id.* To cite examples he provides, Alabama grants electrical cooperatives eminent domain power. Ala. Code § 37-6-3(15) (Michie). Arkansas grants the power to electric utilities. *Arkansas Power & Light Co. v. Harper*, 460 S.W.2d 75 (Ark. 1970). Illinois grants it to cable television companies as they lay wiring. *Times Mirror Cable Television of Springfield v. First Nat'l Bank*, 582 N.E.2d 216 (Ill. App. 1991). Indiana grants it for the laying of electric transmission lines. *Hagemeier v. Indiana & Michigan Elec. Co.*, 457 N.E.2d 590 (Ind. App. 1983). Kansas grants it for fiber optic cables used in telecommunications.

*Williams Telecomm. Co. v. Gragg*, 750 P.2d 398 (Kan. 1988). Texas and Oklahoma grant it for laying gas pipelines. *Aquila Sw. Pipeline Corp. v. Gupton*, 886 S.W.2d 497 (Tex. App. 1994); *McInturff v. Oklahoma Nat'l Gas Transmission Co.*, 475 P.2d 160 (Okla. 1970). Oregon lets logging and mining companies condemn land for roads, chutes, and other passages used in their activities. Or. Rev. Stat. 772.410 (2007).

One of the Supreme Court's most-cited and leading takings cases shows that delegated private takings are alive and well. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426, 438 (1982) (concluding that installation of cable plates, boxes, wires, bolts and screws on an apartment building by a cable company pursuant to a statutory authorization constitutes a permanent physical taking). In *Loretto* the taking was the use by a cable company of a statutory permission to place cable facilities on a New York apartment building, whether the owner wanted the facilities there or not. New York State didn't place the cables on Jean Loretto's Upper West Side Manhattan walk-up any more than Nevada officials personally foreclosed the HOA lien. But that doesn't matter. Legislatures delegate to cable companies, railroads, power companies, and gas companies the power to destroy

property rights. And Nevada's Legislature delegated that power to HOAs. When a state empowers private actors to destroy property rights, their takings must be compensated.

**D. The Taking Here Was Without Just Compensation, Because It Is Undisputed That No One Paid Wells Fargo for Loss of the Property Rights That the HOA Foreclosure Extinguished.**

It is undisputed that Wells Fargo has not been compensated for the loss of its property interest occasioned by the HOA foreclosure sale. Thus, if this Court finds that there has been a taking of any sort, it must reverse the dismissal in Mahogany Meadows' favor, for takings must be compensated. U.S. Const. amend. V; *see, e.g., Tahoe–Sierra Pres. Council, Inc.*, 535 U.S. at 322.

**E. The District Court Erred by Relying on *Saticoy Bay* to Find That Foreclosure Under the Statute Is Not a Taking – a Conclusion That Conflicts with a Host of U.S. Supreme Court Authority.**

Without analysis, the district court rejected Wells Fargo's takings claim because the Nevada Supreme Court had rejected it in *Saticoy Bay*. I ER 6-13 (citing *Saticoy Bay*, 388 P.3d at 975). *Saticoy Bay*'s analysis of this issue is wrong on many levels, as demonstrated below. This Court should reverse the district court and reject *Saticoy Bay*, thus establishing the unconstitutionality of the Statute in an enduring way.

18

1. *Saticoy Bay Conflicts with Radford, Armstrong, and Security Industrial Bank by Treating Liens as a Species of Property the Government May Extinguish Without Compensation.*

*Saticoy Bay* conflicts with U.S. Supreme Court precedents making clear that the Government's legislative destruction of liens is a taking. *See, e.g., Radford*, 295 U.S. at 601-02 (Frazier-Lemke Act was a taking by stripping a mortgagee's rights in their property); *Armstrong*, 364 U.S. at 48 (liens are property, which when taken, must be compensated by the government); *Sec. Indus. Bank*, 459 U.S. at 76-78 (suggesting that state's destruction of lien's value by transferring its value to another private party is taking).

*Saticoy Bay* conflicts with *Radford*, which is close to being on all fours with this case, and presents a taking even more palpable than that in *Radford*. In *Radford*, the Court held the Frazier-Lemke Act, which allowed farmers to buy their property at its current appraised value on a deferred payment plan, unconstitutional. 295 U.S. at 580-581. The Act's infringement of a mortgagee's right to recover full payment before being forced to abandon its security interest was impermissible because that is "the essence" of a mortgage. *Id.* The Court held that that the Act impaired substantive property rights and held that Fifth Amendment

eminent domain proceedings and compensation were required to alter the mortgagee's interest in that way. *Id.* The Court concluded:

> For the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain … .

*Id.* at 601-02.

It is of no constitutional moment that Wells Fargo's property interest was taken by Nevada and given to an HOA – a stranger to Wells Fargo – instead of to Borrowers. The taking here is even clearer, as the Frazier-Lemke Act impaired but did not entirely destroy the rights of the mortgagee. Here, Wells Fargo's property right was entirely destroyed. *Saticoy Bay* conflicts with *Radford* by failing to find a taking.

*Saticoy Bay* also conflicts with *Armstrong* and *Security Industrial Bank* by treating liens as a specimen of property that, when destroyed by the state, are not takings under the Fifth Amendment. *Saticoy Bay* explains that there is no taking here because Nevada "has not directly appropriated Wells Fargo's lien, nor has it directly appropriated the

property subject to Wells Fargo's lien." *Saticoy Bay*, 388 P.3d at 974

(citing *Armstrong*).

The Supreme Court rejected that narrow reading of *Armstrong* in

*Security Industrial Bank*, and explained that the very distinction the

Nevada Supreme Court drew is one without a difference:

> The government seeks to distinguish *Armstrong* on the ground that it was a classical 'taking' in the sense that the government acquired for itself the property in question, while in the instant case the government has simply imposed a general economic regulation which in effect transfer the property interest from a private creditor to a private debtor. While the classical taking is of the sort that the government describes, ***our cases show that takings analysis is not necessarily limited to outright acquisitions by the government for itself***.

459 U.S. at 77-78 (emphasis added, citations omitted).

*Armstrong* itself makes clear that it cannot be read that way. It

explained that "such a right" as it recognized – for compensation from the

government's destruction of lien rights – was held "compensable by virtue

of the Fifth Amendment [as] decided in *Radford*." 364 U.S. at 44.

*Radford* was a case just like this one, in which the government did not

take the liens for itself.

21

*Saticoy Bay* in one passage seems to conceive of lien rights as not subject to takings analysis at all. After unsuccessfully distinguishing *Armstrong* as a case in which Nevada did not receive the benefit of the lien for itself, *Saticoy Bay* notes that "Wells Fargo's intangible property interest is not subject to actual physical invasion." *Saticoy Bay*, 388 P.3d at 974. While true, neither were the "intangible property interest[s]" in *Radford*, *Armstrong*, or *Security Industrial Bank* "subject to actual physical invasion." *Saticoy Bay* conflicts with many Supreme Court authorities by dismissing constitutionally protected intangible property interests in this way. A clear line through *Radford*, *Armstrong*, and *Security Industrial Bank* makes Nevada's appropriation of Wells Fargo's lien rights a taking, thus making *Saticoy Bay* error.

        2.    *Saticoy Bay Conflicts with Lucas and Lingle By Holding That Nevada's Complete Destruction of Wells Fargo's Property Interest Was Not a Per Se Taking.*

*Saticoy Bay* also errs and conflicts with *Lucas* and *Lingle* by failing to treat Nevada's elimination of "all economically beneficial use" of Wells Fargo's property interest as a taking. *Lucas*, 505 U.S. at 1019 ("sacrifice of all economically beneficial uses" of real property is a taking); *Lingle*, 544 U.S. at 538 (citing *Lucas* for proposition that "regulations that

completely deprive an owner of '*all* economically beneficial us[e]'" of their property is a taking) (quoting *Lucas*, 505 U.S. at 1019). Wells Fargo's interest was completely destroyed, as a matter of law. This is patently a taking.

*Saticoy Bay* attempts a path around *Lucas* and *Lingle* by relegating to a footnote the Supreme Court's rule that a state's complete extirpations of rights in property are takings, and by stating without analysis that the Statute is not a *per se* taking. *Saticoy Bay*, 388 P.3d at 974 & n.6. If what the Nevada Supreme Court meant in its footnote 6 was that Wells Fargo was not a "landowner" and that the rule simply does not apply to it, that is simply wrong and conflicts with the Supreme Court's teachings. As discussed above, lien rights in property are rights that, when revoked by government regulation, are a taking. *Radford*, 295 U.S. at 601-02; *Armstrong*, 364 U.S. at 48; *Sec. Indus. Bank*, 459 U.S. at 76-78.

       3.   *Saticoy Bay Conflicts with Loretto in Finding That Nevada's Empowerment of Intermediaries to Completely Extirpate Wells Fargo's Property Rights Makes It Any Less a Taking.*

*Saticoy Bay* finally conflicts with the Supreme Court's decision in *Loretto* – and really, with all law recognizing delegated private takings –

23

when it appears to excuse the taking based upon Nevada not invading the property at issue in its own interest.

The Supreme Court's decision in *Loretto* made clear that when an antecedent statute gives rise to later, state-authorized private action that invades property at the state's direction, the result is a taking. *Loretto*, 458 U.S. at 441. Considering a New York statute requiring a landlord to permit cable companies to install cable wiring, the Court held that "§ 828 works a taking of a portion of appellant's property." *Id.* There, as here, New York did not invade the apartment structure to place small amounts of wire in condominium units. Intermediaries empowered by the state did that. And it was taking there, as it should have been in *Saticoy Bay*.

*Loretto* is consistent with the rich tradition in American law of delegated private takings. *See, e.g.*, Abraham Bell, Private Takings, 76 U. Chi. L. Rev. 517, 545 (2009). As discussed above, these takings can be grants of powers of eminent domain to railroads, to electrical cooperatives, to companies laying fiber optic cables for telecommunications, and to logging and mining companies permitted to condemn property. These takings are the day-to-day life of the Takings Clause in the United States. The presence of government-empowered

intermediaries in them does not make them any less subject to takings analysis.

By missing this point, and treating the interposition of the HOA as something that makes the state not a participant in a taking, *Saticoy Bay* conflicts with *Loretto*. Ultimately, that analysis also conflicts with the law of this Circuit that the Statute constitutes state action – this Court has already found Nevada to be a participant in the wrong effected by the HOA's extirpation of a first position mortgage. *See Bourne Valley*, 832 F.3d at 1157. As such, the interposition of the HOA cannot aid Mahogany Meadows, and *Saticoy Bay's* conclusion that it is in conflict with *Bourne Valley*. The district court erred by relying on *Saticoy Bay*.

      4.    *Even If "Legitimate Investment-Backed Expectations" Mattered Here, and They Do Not, Saticoy Bay Erred in Deciding That Wells Fargo Lacked Any.*

Yet even if one assumes incorrectly that the Statute did not effect a *per se* taking, *Saticoy Bay* nonetheless erred in concluding that the holder of a previously recorded security interest – there, Wells Fargo – had no "legitimate investment-backed expectations." *Saticoy Bay*, 388 P.3d 975. So holding, *Saticoy Bay* mistakenly analyzed Wells Fargo's claim as if it did not constitute a *per se* taking. *Saticoy Bay*, 388 P.3d at 974 & n.6.

Given that it was a *per se* taking, the regulatory takings analysis the Nevada Supreme Court performed was erroneous. Yet even within that analysis, *Saticoy Bay* erred by reaching the wrong conclusion on the question of whether prior passage of the Statute meant that Wells Fargo had no such expectations.

The Federal Circuit correctly rejected just that that argument in *Presault v. United States*, 100 F.3d 1525, 1539 (Fed. Cir. 1996) (en banc). There, Vermont landowners near railroads were affected by the Interstate Commerce Commission's conversion of railways to public recreational and hiking trails, consistent with the Government's authority under the Rails-to-Trails Act. *Id.* at 1529. The Government defended against the landowners' takings claim by using the same argument the Nevada Supreme Court raised in *Saticoy Bay* – that the Statute was on the books before the property right arose. *Id.* at 1539. Just as the Federal Circuit rejected that defense in the physical takings case *Presault*, so should *Saticoy Bay* have rejected it in that *per se* takings case. And even this were not a *per se* taking case, *Saticoy Bay* ignored the possibility that Wells Fargo had a legitimate investment-backed expectation in 2003 that the Statute would never be used to destroy its

lien, since no Nevada judicial decision would say that for eight further years, and since this Court later determined that the Statute was unconstitutional in how it destroyed liens without notice.

5. *Governing Circuit Law Provides that NRS 116 Is Action by Nevada's Government, as It Operates to Eradicate Wells Fargo's Mortgage.*

The district court's reliance on *Saticoy Bay* is particularly erroneous because the aspect of *Bourne Valley*'s holding concerning state action remains good law and is unaffected by the Nevada Supreme Court's ruling in *Saticoy Bay*. The certified question ruling does nothing to alter the law of this Circuit that NRS 116 is state action for purposes of whether it violates the constitutional rights of affected persons whose property interests it destroys. *Bourne Valley*, 832 F.3d at 1159-1160 ("In this context, where the mortgage lender and the homeowners' association had no preexisting relationship, the Nevada Legislature's enactment of the Statute is a 'state action.'").

Indeed, this Court has already rejected the argument that there is no state action here. It is thus Circuit law that there is state action despite the HOA, and not the Nevada government, consummating the foreclosure. *Bourne Valley*, 832 F.3d at 1159-60 ("We think the 'state

action' requirement has been met."). *Bourne Valley*'s conclusion that there is state action here remains Circuit law, irrespective of the Nevada Supreme Court's reconstruction of the Statute's notice requirement, or its finding no state action in *Saticoy Bay*. *Murtishaw v. Woodford*, 255 F.3d 926, 964-66 (9th Cir. 2001) (finding that federal courts are the final say on constitutional issues even if a state supreme court interprets state law to find no constitutional violation).

As such, *Bourne Valley*'s holding concerning state action is a matter of federal law that cannot be disturbed by the Nevada Supreme Court. State action is not a question here, and the district court's reliance on *Saticoy Bay* is particularly erroneous in light of *Bourne Valley*'s controlling federal authority to the contrary.

6.   *The U.S. Supreme Court's New Decision in Knick v. Township of Scott Underscores the Vitality of the Takings Clause and the Need to Apply It Here.*

The Supreme Court's new decision in *Knick v. Township of Scott*, the Court reinvigorated the Takings Clause.  The Court held that a government violates the Takings Clause when it takes property without compensation, and a property owner may bring a federal claim at the time of the taking, overruling the state-litigation requirement of *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).  In other words, under *Knick*, property owners can bring a federal takings claim as soon as their property has been taken without compensation, regardless of any other remedies (including in state court) that might be available.  This Court should reach the takings issue, consistent with the Supreme Court's direction.

## II.   The Sale Effects an As-Applied Due Process Violation Because the Form of the Notice of Default and Notice of Sale Was Not Calculated to Apprise Wells Fargo of the <u>Danger to Its Deed of Trust.</u>

*Bourne Valley* aside, the Notices in this case are not designed to provide the best notice practical under the circumstances, as the law requires.  The Statute simply does not require constitutionally adequate

content in either the notice of default or notice of sale and is therefore unconstitutional.

Constitutional notice is that which apprises "interested parties of the pendency of the action and afford[s] them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Additionally, "[t]he notice must be of such nature as reasonably to convey the required information …." *Id.* Even where a mortgagee had actual knowledge of a delinquent payment of taxes, such knowledge was insufficient to satisfy due process because the mortgagee had to be notified that a tax sale was pending. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983). Thus, the content of the notice "requires the best notice practical under the circumstances … ." *In re Drexel Burnham Lambert Gp. Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993) (citing *Mullane*, 339 U.S. at 315). Courts balance the competing interests involved to determine whether the content of the notice meets due process standards. *E.g. Thomas v. Bd. of Trs. of Galveston Indep. Sch. Dist.*, 515 F. Supp. 280, 287 (S.D. Tex. 1981) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

Here, neither the Notice of Default nor the Notice of Sale was reasonably calculated to notify Wells Fargo that the Deed of Trust could be extinguished if the HOA foreclosed. II ER 155. Although the Notices mention that Borrowers were in jeopardy of losing their home, neither notice makes a reference to the priority of Wells Fargo's Deed of Trust. II ER 155. Nothing in the notices inform a lender that the HOA was foreclosing on a superpriority lien. II ER 155.

Notably, Wells Fargo's interest in the Property is equivalent at least to the amount of the fair market value at the time of the sale. However, the burden of including a simple statement in the notices to a mortgagee advising that an HOA is foreclosing on a superpriority lien is extremely small. The Statute does not provide for it. And the HOA does not provide such a notice. Even if Wells Fargo received the HOA's notices, they were not designed to put Wells Fargo on notice that its Deed of Trust could be extinguished and did not provide Wells Fargo the superpriority lien amount. The Statute, as it was written at the time of the sale, is thus unconstitutional.

## III. The District Court Erred by Not Permitting Wells Fargo to Support Its Quiet Title Claim Under the SCRA.

During discovery, Wells Fargo's counsel became aware that Carrasco was an active duty military member at the time of the February 5, 2013, HOA foreclosure sale, and thus was afforded the protections of the Servicemembers Civil Relief Act ("SCRA"). The SCRA provides Wells Fargo an alternative theory of relief under the causes of action previously pleaded in its Complaint. *See* ECF No. 1. However, as Wells Fargo was preparing to disclose evidence relevant to that theory during discovery, the district court granted Mahogany Meadows' motion to dismiss in its entirety and entered judgment in Mahogany Meadows' favor. The district court abused its discretion by declining to allow Wells Fargo to pursue its quiet title claim under that additional theory.

### A. The SCRA Preempts Contrary State Law and Protects Carrasco's Property Interest.

#### 1. *The Foreclosure Occurred in Violation of the SCRA and Is Thus Invalid.*

In 1940, Congress passed the SCRA, which grants military members an array of powers, privileges, and exemptions from otherwise applicable laws to enable them to carry out their patriotic duties serving their country. Among these is a broad statutory exemption captioned

that provides that when the military members are on active-duty military status, none of their property shall be subject to foreclosure without first requiring a court order. 50 U.S.C. § 3953.

Because the HOA's foreclosure sale occurred while Borrower Carrasco was on active-duty military status, and without any court order, it was invalid.

A federal statute expressly preempts contrary law when it "explicitly manifests Congress's intent to displace state law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). This is the case here: the text of the SCRA declares that "a sale, foreclosure, or seizure of property for a breach of an obligation [that is secured by a mortgage, trust deed, or other security in the nature of a mortgage] shall not be valid if made during, or within one year after, the period of the servicemember's military service." 50 U.S.C. § 3953; *see also McGreevey v. PHH Mortg. Corp.*, 897 F.3d 1037, 1040 (9th Cir. 2018). The SCRA automatically voids any foreclosure on a lien held by an active-duty service member. Therefore, the SCRA preempts NRS § 116.3116, *et seq.* to the extent that the state statute otherwise would permit any such nonconsensual limitation or extinguishment.

33

2. *The SCRA Preempts the State Foreclosure Statute.*

The SCRA preempts the State Foreclosure Statute because "state law is naturally preempted to the extent of any conflict with a federal statute." *Valle del Sol*, 732 F.3d at 1023 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). "[U]nder the Supremacy Clause . . . any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (internal quotations and citations omitted). Thus, conflict preemption occurs "where it is impossible for a private party to comply with both state and federal law" or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Valle del Sol*, 732 F.3d at 1023 (internal quotations and citations omitted). In short, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).

Similarly, Congress's clear and manifest purpose in enacting Section 3953 was to protect the property of active-duty servicemembers from actions, such as the HOA foreclosure sale, that otherwise would deprive them of their interests in property. In so doing, Congress ensured

34

that the servicemembers would not be subject to an array of conflicting state laws, such as those relied upon by Plaintiff, which could undermine the efforts to preserve the property of active-duty servicemembers. Accordingly, the SCRA preempts any state law that would authorize the HOA Sale to impact the foreclosure of Carrasco's interest in the Property without first securing a court order.

Because the HOA foreclosed on the Property in violation of the SCRA, the sale was invalid, and should not have extinguished the Deed of Trust. The district court abused its discretion by refusing to allow Wells Fargo to raise this issue.

### B. The District Court Abused Its Discretion by Dismissing Wells Fargo's Complaint Without Allowing Wells Fargo to Support Its Quiet Title Claim under the SCRA.

The district court granted Mahogany Meadows' Motion to Dismiss when both parties were engaged in active discovery. Just as Wells Fargo was preparing to make further disclosures, including evidence relevant to the application of the SCRA, the district court unexpectedly issued its ruling, granting Mahogany Meadows' Motion to Dismiss on March 16, 2018. While the Order dismissed Wells Fargo without prejudice by its terms, it was effectively with prejudice in light of the running of the

limitations period. The district court abused its discretion by refusing to allow Wells Fargo to prosecute the case on the merits under the SCRA under the circumstances here.

Where a complaint arguably attempts to assert a claim, it is manifestly unjust to dismiss the complaint without leave to amend. *See Serrano v. Grand Sierra Resort*, 3:12-CV-149-RCJ-WGC, 2013 WL 5278864, at \*5 (D. Nev. Sept. 16, 2013). While the Court granted Mahogany Meadows' Motion to Dismiss *without prejudice*, the dismissal effectively serves as one with prejudice due to the statute of limitations. *See Pension Benefit Guar. Corp. v. Carter & Tillery Enter.*, 133 F.3d 1183, 1187 (9th Cir.1998) (noting that "[w]hile the dismissal was without prejudice, given the statute of limitations problem, the dismissal was effectively with prejudice."); *United States v. Kenner Gen. Contractors, Inc.*, 764 F.2d 707, 709 (9th Cir. 1985) (finding that "[a]lthough the dismissal was nominally 'without prejudice,' it was effectively 'with prejudice' because a new action would be barred by the applicable statute of limitations."), superceded by rule as stated in *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001); *Scrimer v. Eighth Judicial Dist. Court ex rel. County of Clark*, 116 Nev. 507, 514, 998 P.2d 1190, 1195 (2000). Here,

because the Court issued its order more than nine months after Mahogany Meadows filed its motion to dismiss, the statute of limitations expired in the interim and Wells Fargo could not bring a new action to prosecute its claims against Mahogany Meadows anew.

Moreover, in light of the length of time between the motion to dismiss briefing, and the ruling, the parties had substantially completed discovery. Wells Fargo was actively investigating the evidence in support of its position under the SCRA and preparing to disclose all available evidence before the pending close of discovery when the Court issued its ruling close to the end of discovery. As such, the district court's denial of Wells Fargo's request to pursue the SCRA was manifestly unjust and an abuse of discretion.

## Conclusion

For the foregoing reasons, this Court should reverse the district court's judgment in Mahogany Meadows' favor and resolve the important issues raised in this appeal.

DATED this 28th day of June, 2019.

SNELL & WILMER L.L.P.

_/s/ Kelly H. Dove_
ANDREW M. JACOBS
Arizona Bar No. 21146
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202

KELLY H. DOVE
Nevada Bar No. 10569
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
_Attorneys for Wells Fargo Bank, N.A._

## **CERTIFICATE OF COMPLIANCE**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains approximately 7454 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).

2.     This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using a Microsoft Word 2010 processing program in 14-point Century Schoolbook type style.

DATED this 28th day of June, 2019.

SNELL & WILMER L.L.P.

*/s/Kelly H. Dove*
ANDREW M. JACOBS
Arizona Bar No. 21146
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202
KELLY H. DOVE
Nevada Bar No. 10569
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
*Attorneys for Wells Fargo Bank, N.A.*

## <u>STATEMENT OF RELATED CASES</u>

This case raises similar issues to those in the following appeals:

- *Wells Fargo Bank, N.A. v. SFR Investments Pool 1*, No. 17-15508

- *Wells Fargo Bank, N.A. v. SFR Investments Pool 1*, No. 18-17096

- *Wells Fargo Bank, N.A. v. SFR Investments Pool 1*, No. 18-17281


DATED this 28th day of June, 2019.

SNELL & WILMER L.L.P.

*/s/Kelly H. Dove*
ANDREW M. JACOBS
Arizona Bar No. 21146
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202

KELLY H. DOVE
Nevada Bar No. 10569
SNELL & WILMER LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
*Attorneys for Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **APPELLANT'S OPENING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system on June 28, 2019.

*/s/ Maricris Williams*
An Employee of Snell & Wilmer L.L.P.

4850-2701-7861